UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Cases No. 08-15051-SMB, 09-10371-SMB

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

DREIER LLP,

       Debtor.

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

MARC S. DREIER,

       Debtor.

- - - - - - - - - - - - - - - - - - - -x

          United States Bankruptcy Court

          One Bowling Green

          New York, New York


          May 27, 2010

          10:16 AM


B E F O R E:

HON. STUART M. BERNSTEIN

U.S. BANKRUPTCY JUDGE

1

2    Chapter 11 Trustee's Motion to Approve Compromise (Renewed)

3    Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019

4    of the Federal Rules of Bankruptcy Procedure, for Approval of

5    Certain Agreements

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Dena Page

```
1    A P P E A R A N C E S :

2    DIAMOND MCCARTHY LLP

3         Attorneys for Chapter 11 Trustee

4         620 Eighth Avenue

5         39th Floor

6         New York, NY 10018

7

8    BY:   STEVE LODEN, ESQ.

9         HOWARD D. RESSLER, ESQ.

10

11

12   ALSTON + BIRD LLP

13        Attorneys for Paul Gardi and Alex Interactive Media, LLC

14        90 Park Avenue

15        New York, NY 10016

16

17   BY:   ALEXANDER S. LORENZO, ESQ.

18

19

20   WHITE & CASE LLP

21        Attorneys for GSO Capital Partners, LP

22        1155 Avenue of the Americas

23        New York, NY 10036

24

25   BY:   J. CHRISTOPHER SHORE, ESQ.
```

1    UNITED STATES DEPARTMENT OF JUSTICE

2        Office of the United States Attorney

3        One St. Andrew's Plaza

4        New York, NY 10007

5

6    BY:   MATTHEW L. SCHWARTZ, ESQ.

7

8

9    LAMONICA, HERBST & MANISCALCO, LLP

10        Chapter 7 Trustee

11        3305 Jerusalem Avenue

12        Wantagh, NY 11793

13

14    BY:   GARY E. HERBST, ESQ.

15

16

17    KLESTADT & WINTERS, LLP

18        Attorneys for Official Committee of Unsecured Creditors

19        292 Madison Avenue

20        17th Floor

21        New York, NY 10017

22

23    BY:   SEAN C. SOUTHARD, ESQ.

24

25

1          P R O C E E D I N G S

2          THE COURT:  Dreier?

3          MR. LODEN:  Good morning, Your Honor.

4          THE COURT:  Good morning.

5          MR. LODEN:  Steve Loden on behalf of the Chapter 11

6      trustee.

7          We're here this morning on the trustee's renewed motion

8      with respect to the GSO settlement.  I obviously will have a

9      few comments.  Following me, I believe, Mr. Shore on behalf of

10     GSO, would like to speak on behalf of the motion, as well.

11          Your Honor, we previously gave a detailed presentation

12     on the settlement that's before the Court, and in the Court's

13     memorandum decision, the Court did find that the settlement was

14     reasonable but pointed out problems with the bar order.  So we

15     have gone back with GSO to fix those problems, and the result

16     is the amended settlement that's before the Court today.  As to

17     the reasonability of that amended settlement, the monetary

18     terms are unchanged from what was previously presented to the

19     Court.  The coordination agreement with the government is

20     unchanged from what was previously presented.  So those are the

21     same terms as the Court found previously reasonable.  To the

22     extent Gardi attacks, again, the reasonability of the

23     settlement, we think those attacks also fall short for the same

24     reasons they did the first time.

25          As to the bar order itself, in the memorandum

1   decision -- in the memorandum decision, the Court found that it

2   could "bar creditors from recovering their claims from GSO

3   where their claims are (1) based on the debtor's misconduct,

4   and (2) there is no independent basis for an action against GSO

5   other than its receipt of the transfers from Dreier LLP."  The

6   revised bar order before the Court today follows that

7   construction.  To be covered by the revised bar order, your

8   claims must meet two conditions.  First, the claims must relate

9   to your status as a creditor in this case, and second, the

10  claims must be based on either the debtor's misconduct or GSO's

11  receipt of note fraud funds.  And to ensure there's no

12  confusion about those conditions, the bar order also has saving

13  language, and that language says, just to be clear, if you have

14  an independent basis to sue GSO that's unrelated to your status

15  as a creditor and your claims are not based on the debtor's

16  misconduct or GSO's receipt of the note fraud funds, then you

17  are not barred from presenting those claims by this bar order.

18          THE COURT:  Let me ask you a question.  Suppose I'm a

19  GSO investor, and I have a claim for the distribution of those

20  funds.  Wouldn't that claim be barred because it's based on the

21  receipt of the note fraud funds?

22          MR. LODEN:  It's not -- no, Your Honor.  The answer is

23  no, and because it relates to an independent relationship you

24  have with GSO.  In that instance, you are an investor with GSO,

25  and the basis of your claim is that GSO should distribute those

1    proceeds to you as an investor in GSO.  It's not a claim based

2    upon your status as a creditor in this case.

3         THE COURT:  Yeah, I understand.  Okay.

4         MR. LODEN:  Now, Gardi does not offer any examples in

5    its papers of claims that it might think were inappropriately

6    caught by the bar order, but we have spent a lot of time

7    thinking of such examples, as the Court just referenced.  We

8    don't know of any such claims in fact; it's all hypothetical.

9    But for example, as the Court just stated, if an investor

10   thinks that GSO should release funds -- or, proceeds from the

11   note fraud funds, that claim is not covered.

12        How about a creditor that hired GSO to provide advice

13   on a wholly unrelated transaction?  That claim's not covered,

14   either.  Why?  Because the claim is not based on the debtor's

15   misconduct or GSO's receipt of the note fraud funds.

16        We even took it one step further and said, what if

17   there's a creditor, another hedge fund in this case, that hired

18   GSO to advise on its investment in the note fraud fund.  Would

19   that claim be covered?  The answer is no.  Why?  Because it

20   relates to an inde -- it arises from an independent

21   relationship with GSO and the parties seeking that advice, and

22   it's not based on the debtor's misconduct or GSO's receipt of

23   note fraud funds.

24        Gardi doesn't say that it holds any of those such

25   claims, but even if such a claim did exist, it's not covered by

1   the bar order.  Nor does Gardi assert that it has any basis to

2   sue GSO separate and apart from its status as a creditor today.

3   So make no mistake about it.  Gardi knows exactly what claims

4   are covered by the borrower, and that's why it objected:

5   because its claims are covered by the bar order.

6        Now, Gardi says that everything should be left in

7   limbo until we know whether it's actually a creditor in this

8   case.  Gardi filed multiple proofs of claim in this case, so he

9   obviously believes that he's a creditor.  Those claims are

10  deemed allowed until they're objected to, and no objection's on

11  file.  So there's no basis to hold this up simply because Gardi

12  is now rethinking its decision to file claims in this case.

13       THE COURT:  Well, even if the claim's disallowed, he's

14  still a creditor.

15       MR. LODEN:  That's true; that's true.  But more

16  fundamentally, it doesn't matter whether Gardi is a creditor or

17  not.  It's completely irrelevant to whether -- to Gardi's

18  efforts to press its claims against GSO because this Court

19  ruled in the memorandum decision that claims to compel GSO to

20  repay Ponzi scheme proceeds are owned by the trustee in this

21  estate.  Thus the automatic stay applies and precludes all

22  third parties -- not just creditors -- all third parties from

23  usurping the trustee's rights to bring those claims.

24       THE COURT:  Well, Gardi's in a little different

25  situation which I dealt with.  He claims to have an essence of

1    property interest in the fund.  He's not saying he's a general

2    unsecured creditor in this.

3         MR. LODEN:  And he's made those arguments via a lift

4    stay motion --

5         THE COURT:  I've dealt with that.

6         MR. LODEN:  Right.  So, Your Honor, we think the "we

7    should wait until we find out if we're a creditor" argument,

8    it's a complete red herring.  It has no relevance at all to the

9    issue before the Court today.  Plus, the delay that Gardi seeks

10   would absolutely wreak havoc in this case.  Not only would it

11   delay the coordination agreement with the government, thus

12   forcing disputes with the government, it would delay the

13   forfeiture itself, thus delaying payments to credit -- to crime

14   victims in the forfeiture.  And I know Matt Schwartz, on behalf

15   of the government, is here today, and he may want to speak to

16   that delay.

17        The delay also puts other settlement discussions in

18   limbo because, as we've said multiple times, without the

19   ability to give a bar order, no one is going to settle with the

20   trustee.

21        One final note about Marc Dreier's 341 testimony

22   that's referenced in Gardi's response.  Gardi says that this is

23   newly-discovered evidence that proves it can trace JANA's Funds

24   into GSO's hands.  That testimony does nothing of the sort.  It

25   merely confirms --

1          THE COURT:  That doesn't matter.  It doesn't matter.

2     I assume that for the purposes of the decision.

3          MR. LODEN:  I agree, Your Honor.

4          THE COURT:  Okay.

5          MR. LODEN:  It's completely irrelevant.

6          THE COURT:  Let's get back to the --

7          MR. LODEN:  If the Court agrees, then I'll skip that

8     presentation entirely.

9          THE COURT:  Let's get back to the bar order.

10         MR. LODEN:  Your Honor, then, for the reasons stated,

11    we ask the Court to grant the motion.  As I said at the outset,

12    I believe Mr. Shore would also like to speak on behalf of GSO

13    in support.

14         THE COURT:  Okay, I just -- maybe I should ask Mr.

15    Shore.  I'll hear from -- let me hear Mr. Shore, because I have

16    a question.

17         MR. LODEN:  Thank you, Your Honor.

18         MR. SHORE:  Thank you, Your Honor.  Chris Shore from

19    White & Case for the GSO parties.  I'm happy to answer whatever

20    questions you have with respect to the bar order.  We read your

21    decision.  The clients are perfectly willing to operate under

22    that decision but just want, as you would expect, full closure

23    to the fullest extent of the Court's subject matter

24    jurisdiction.  If we wrote an order that says we're released to

25    the fullest extent to the Court's subject matter jurisdiction,

1    I think that's within the spirit of what the parties want.  The

2    question is how to draft that.

3         I think, Your Honor -- and there are really, I guess,

4    two issues.  First of this issue of the threshold of the

5    creditor and party-in-interest.  And then the second issue is,

6    what happens if you are a creditor and party in interest.  What

7    kind of claims can you bring that are outside the jurisdiction

8    of the Court?  The first issue, I think, is to some extent a

9    due process issue.  You are given status to appear in a

10   bankruptcy court and be heard -- either as a creditor or a

11   party-in-interest -- to complain about the settlement.  I think

12   you then can be bound into the settlement.  So it's a question

13   of both due process and personal jurisdiction which the Court

14   now has over the Gardi parties.

15        The next question is once they're in the case, what

16   kind of claims can the Court bar?  It's not just, as they

17   suggest, claims that belong to the debtor.  We don't need a bar

18   injunction for that; that's going to be covered in the

19   discharge injunction.  These are claims that the Gardi parties

20   would claim to have directly against GSO, arising out of some

21   relationship between GSO and the Gardi parties.  If the only

22   relationship between Gardi and GSO is the fact that they both

23   did business, wrongfully or inadvisably, with Marc Dreier or

24   Dreier, LLP, that's exactly where the Court's subject matter

25   jurisdiction covers because the Code is intended to take like-

1    situated creditors -- GSO and Gardi -- and treat them fairly

2    with respect to a pot of assets.  So if the claim exists only

3    because the interface between Gardi and GSO is their like

4    status as creditors of this estate, then those claims can be

5    barred, and that provides the mechanism by which the Court can

6    say Gardi, as a creditor and party-in-interest, GSO, the hedge

7    funds, you can all share ratably in the assets of this debtor.

8          If, however, there is a claim which exists,

9    notwithstanding the fact of the creditor interface, that's not

10   released.  So that's -- the intent, here, is the draft language

11   which says if you're not -- if you have a claim which arises

12   independently of your status of being a creditor or party-in-

13   interest in the case, and it's not related to the note fraud

14   funds and the receipt of the note fraud funds, that language in

15   that saving sentence there, then that is a claim you can bring.

16   And that's the way we allow for -- and it was never our intent

17   to bar a claim of a GSO employee or GSO creditor or something

18   like that, but rather to make clear that if you are saying, I

19   suffered an injury based upon the debtor's misconduct or upon

20   the fact that GSO is holding the funds, then that is going to

21   be released.  And you are going to be channeled, like the

22   Court -- or, the Second Circuit gathered in Metromedia, the

23   channeling injunction cases -- you're going to be channeled to

24   that fund to seek redress for that injury.

25          So that's purely the intent.  The question is just how

1    to get there.  I think we got there with the language by

2    putting in the dual concept of you've got to be -- it's got to

3    be based solely -- or, it's got to be based on something other

4    than your status as a creditor and party-in-interest and it's

5    got to be something other than related to the note fraud funds.

6         So if you have any questions, I'm happy to answer

7    them.  But that's what we're trying to draft.

8         THE COURT:  Let me hear from Gardi's counsel.

9         MR. LORENZO:  Good morning, Your Honor.  Alex Lorenzo

10   from Alston + Bird for Paul Gardi and Alex Interactive Media.

11        As an initial matter -- and I want to touch on

12   something that the trustee's counsel brought up -- we recognize

13   the significant consideration that went into your April 28th

14   decision.  As you see from our papers, we're not looking to

15   reargue those points.  We respectfully disagree, but this is

16   neither the time nor place, and we've incorporated our previous

17   objections.  And this morning, I'm here to incorporate the

18   points raised on oral argument when we were here in February.

19        I think one of the interesting things and one of the

20   differences from last time we were before you is you can see

21   I'm standing alone; there are no other objectors to this bar

22   order.  And I think that's telling --

23        THE COURT:  It's a smaller courtroom.

24        MR. LORENZO:  It's telling and informative, Your

25   Honor, because unlike the hedge fund objectors, we will never

1  benefit from a bar order.

2      THE COURT:  What's the claim that Gardi has that your

3  concern is being cut off by this bar order?

4      MR. LORENZO:  I think there are two types of claims,

5  Your Honor.  One, we are worried -- and I think the comments

6  today -- we are worried that, ultimately, it's going to be

7  determined, or there's going to be a big fight and we're not

8  going to be determined to be a creditor to the estate, that our

9  proof of --

10     THE COURT:  That's got nothing to do with this

11  settlement.

12     MR. LORENZO:  Well, it does -- and this brings in --

13  and it was interesting to hear the argument today because what

14  I'm reading, and looking through -- and on page 5 and 6 of our

15  papers, we do a redline between this amended bar order and the

16  previous bar order -- at best, it seems internally

17  inconsistent.  It doesn't seem like they have complied --

18     THE COURT:  In what way?

19     MR. LORENZO:  Well, to start, the first sentence still

20  reads that "any and all creditors, parties-in-interest, and any

21  entity or person that files a proof of claim in this Chapter 11

22  or Chapter 7 case shall be permanently enjoined from

23  commencing", and then, rather than limiting the types of

24  action, it in fact expands the types of actions that are

25  barred.

1        THE COURT:  It's basically all claims and causes of

2   action.  You can put in all the verbs or all the nouns that you

3   want, but that's what it is.

4        MR. LORENZO:  No, no, and that's what it appears to

5   be.  Our understanding, though, of the April 28th decision, and

6   I think what they try to do in the text at the end of the order

7   is try and cut out claims that are, sort of, brought by third

8   parties, the issue being, if we are ultimately determined not

9   to have a claim in the bankruptcy --

10       THE COURT:  Right.

11       MR. LORENZO:  -- which we --

12       THE COURT:  What's the claim, though --

13       MR. LORENZO:  Well, I think --

14       THE COURT:  Let me ask you a question.

15       MR. LORENZO:  Sure.

16       THE COURT:  What's the claim that you would want to

17  bring against Dreier's estate or the LLP estate that depends at

18  all upon your status as a creditor --

19       MR. LORENZO:  Against the --

20       THE COURT:  -- or not being a creditor?

21       MR. LORENZO:  Your Honor, against the LLP estate or

22  against GSO?

23       THE COURT:  Either one, either one.  I'll just say

24  Dreier.  What's the claim that you're concerned about bringing

25  that you're fearful will somehow be adversely affected under

1    this bar order, if your not a -- if your claim is disallowed?

2         MR. LORENZO:  If our claim is disallowed, I think it

3    would be a claim against GSO to pursue the money that we

4    believe is ours.  Because if our claim is disal --

5         THE COURT:  That's exactly the claim I said you

6    can't -- irrespective of this bar order, that's exactly the

7    claim I said you can't bring.

8         MR. LORENZO:  Well, and I want to -- that was the

9    second point that I wanted to touch on, and I wanted to pick up

10   on something on your April 28th decision.  We don't concede

11   this, but for the moment, just for arguing, you point out that

12   JANA transferred the funds to Dreier, LLP, and then Dreier, LLP

13   acquired legal title.  And then we show -- and I think you

14   acknowledge this, but even if you don't -- we show that the

15   funds, then, within three days, go to the GSO parties, and the

16   issue that is in dispute, and we respectfully disagree, but is

17   whether or not Dreier, LLP was able to transfer legal and

18   equitable good title to GSO.  For the moment, assuming they

19   are, which we contest, what the trustee is effectively doing

20   is, Dreier didn't have good title.  It had legal title, but the

21   funds were held in escrow.  And this is the point that was

22   raised very early in the bankruptcy when they released escrow

23   funds to clients because Dreier didn't have equitable title to

24   these funds and creditors weren't entitled to get them.  So the

25   funds go to GSO; Dreier never -- they're stolen funds; Dreier

1   never has equitable title.  In the preference action, they're

2   now seeking to bring back these funds, and it's a little bit of

3   a slight of hand because the funds coming back, they're

4   claiming actually belong to the estate, that they have legal

5   and equitable title, even though when they left the estate,

6   they only had legal title.  And so they're using -- and this is

7   where the "but" in their point and --

8           THE COURT:  No, that's not what's happening here.

9   What they're recovering is whatever title or whatever interest

10  Dreier had.  Your problem -- that's not the problem with

11  Gardi's claim.  The problem with Gardi's claim is that even if

12  he would be entitled to impose a constructive trust under non-

13  bankruptcy law, I ruled that he's not entitled to a

14  constructive trust under bankruptcy law.  Because no one else

15  has equitable title, in essence, the estate gets equitable

16  title to those funds because nobody's got a greater interest.

17          MR. LORENZO:  And I think in --

18          THE COURT:  But that's got nothing to do with the bar

19  order.

20          MR. LORENZO:  Well, I think the concern of the bar

21  order -- and obviously, as you see in our notes of appeal, we

22  respectfully disagree from that determination -- the problem

23  with the bar order is, at the end of the day, if it's

24  determined that we don't have a claim in the bankruptcy estate,

25  and we're sued through a series of actions that are

1   inconsistent, we're out of luck because if you said that we

2   don't have a claim in the bankruptcy estate, under this bar

3   order, we, then, because we filed a proof of claim, we're

4   prohibited from suing GSO to get the money back.  The reason we

5   wouldn't have a claim in the bankruptcy estate would be

6   something along the lines of well, we don't really have your

7   money; this wasn't your money.  And that is a concern that we

8   are facing.

9           THE COURT:  How could you not have a contract claim,

10  at a minimum, against LLP?

11          MR. LORENZO:  Contract claim against LLP, Your Honor?

12          THE COURT:  Or Dreier, personally, for fraud.  How

13  could you not have that claim?

14          MR. LORENZO:  Oh, we believe we do.  We believe we

15  have a fraudulent --

16          THE COURT:  Is there any dispute they have that claim?

17          MR. LODEN:  Your Honor, I've got their proof of claim

18  here.

19          THE COURT:  Right.

20          MR. LODEN:  And that's exactly -- well, they make two

21  arguments in their proof of claim, one of which counsel is

22  making this morning.  They clearly make the constructive trust

23  argument.  The legal title arguments --

24          THE COURT:  I'm not talking about that.  Is there any

25  question that they have, at a minimum, an unsecured claim

1    against LLP for failing to pay over the settlement?

2            MR. LODEN:  They're -- from our perspective, there's

3    no question that Gardi has, at best, a fraud claim against

4    Dreier, LLP and/or Marc Dreier for fraudulently stating, if

5    it's true, that there was a settlement when, in fact, there

6    wasn't one.

7            THE COURT:  It doesn't matter.  He made a settlement.

8    I mean, assuming he ratifies the settlement -- he hasn't done

9    that yet.  But he made a settlement.  Dreier got the money or

10   Dreier LLP got the money.  They're contractually obligated to

11   pay it over, even if there was no fraud.  Wouldn't they be?

12           MR. LODEN:  To the extent the funds are identifiable?

13   Perhaps.

14           THE COURT:  What does identifiable have to do with it?

15   It's a contract claim or a fraud claim.

16           MR. LORENZO:  Or legal malpractice, Your Honor.

17           THE COURT:  Well, fine.

18           MR. LODEN:  Well, what I understand the Court --

19           THE COURT:  All I'm asking you is if you're willing to

20   concede that they have an unsecured claim in this case.

21           MR. LODEN:  One moment.  I think that there's --

22           THE COURT:  If you're not, you're not.  All right.

23           MR. LODEN:  Yeah, I think that there's some factual

24   issues that we're not able --

25           THE COURT:  Like what?

1          MR. LODEN:  Well --

2          THE COURT:  He's a client of the firm.

3          MR. LODEN:  -- as you say, they have not ratified the

4     settlement yet.  In fact, they state precisely the opposite.

5     But certainly in terms of settlement discussions with Gardi, we

6     would be more than willing to consider an allowance of their

7     claim.

8          MR. LORENZO:  I think the other claim that we are

9     worried about, and I think this goes to a larger point -- and

10    stop me if this is not the time to address it -- but by getting

11    this bar order, they're not only getting rid of, sort of, the

12    claims that creditors may have.  They're getting rid of an

13    aiding and abetting claim because, as the trustee pointed

14    out --

15         THE COURT:  That's an independent wrong, though.

16         MR. LORENZO:  So would that -- well, and this is

17    what's unclear, because under the language of the current bar

18    order, the proposed bar order, an aiding and abetting claim by

19    Gardi against GSO, I mean, GSO's on the hook not just for the

20    money that they got.  That would be the entire fraud.  And I

21    think that's why GSO is so eager to be done and get this bar

22    order.

23         THE COURT:  All right.

24         MR. LORENZO:  As we read it, and we would be happy to

25    hear other input on this, that type of claim would be barred

1    under this bar order.

2          THE COURT:  Mr. Shore, do you think an aiding and

3    abetting claim would be barred?

4          MR. SHORE:  If the -- it would be barred under this

5    order, but --

6          THE COURT:  Then I'm not going to sign this order.

7          MR. SHORE:  Okay, well, let me just address that,

8    then.  If what they're saying is that GSO engaged in behavior

9    directly -- it's a question of aiding and abetting what.

10         THE COURT:  Aiding and abetting is substantial

11   assistance with knowledge.

12         MR. SHORE:  Aiding and abetting with what.  That's

13   what -- right?  I mean, it's the -- if they're saying --

14         THE COURT:  Well, he's claiming he was defrauded.  So

15   he would have to show that GSO, with knowledge, gave

16   substantial assistance to that fraud.

17         MR. SHORE:  To that particular fraud, I don't think

18   the bar order would cover that.  What I'm talking about is if

19   the claim is that GSO, right, was engaged in -- it's this

20   feeder fund litigation that's out there with Madoff and

21   everything else -- the idea that -- as opposed to -- and this

22   is why I was trying to get to a particularized --

23         THE COURT:  But he's not an investor in GSO.

24         MR. SHORE:  Right.  This is why I was talking about a

25   particularized injury.  If what we're talking about here is

1   that the Gardi parties suffered an injury which was felt by

2   creditors as a whole, that's the kind of derivative liability

3   you were talking about, I think, in the opinion, which is --

4           THE COURT:  But that's not what he's talking about.

5           MR. SHORE:  Right.  If he's talking about a

6   particularized injury, which is -- that's where the language

7   is, other than his status as a creditor and party-in-interest.

8   What he's saying is, I suffered a creditor injury; he should be

9   channeled to this money.  If he's saying, I suffered an

10  independent injury that I felt independent of any other

11  creditor in the estate, I don't think that is barred, and it

12  was not the intent to bar that.  So that's why I get to aiding

13  and abetting what.  Aiding and abetting a fraud against him,

14  that is, we made a misrepresentation or gave substantial --

15          THE COURT:  He has no standing and will never have

16  standing to assert a claim that GSO aided and abetted Dreier

17  into defrauding LLP or the estate or anybody else.

18          MR. SHORE:  Right.

19          THE COURT:  That's a trustee claim.

20          MR. SHORE:  That's right.

21          THE COURT:  But to the extent he suffers a direct

22  injury because GSO or anybody else has committed an independent

23  wrong which happens to relate to this case and may happen to

24  relate to the estate, those claims are not barred.

25          MR. SHORE:  Right.

1          THE COURT:  Direct claims that are based on the

2     independent wrongdoings of -- in the example that you guys

3     gave.

4          MR. SHORE:  That's right, that's right.  And what I

5     don't want, and what the client doesn't want and wants closure

6     on is this notion that somehow there has to, for this

7     individual -- or, sorry, for this creditor-wide injury, there

8     has to be more money.  If he's got some basis that he can,

9     under Rule 11, state that GSO actively participated in this and

10    gave substantial assistance to his particular wrong, make it.

11    There's nothing we can do to stop a party from doing that.  But

12    it's not this creditor-wide kind of injury that we've been

13    talking about.

14         MR. LORENZO:  Your Honor, I think the point that you

15    raised in your April 28th decision where you said, you know,

16    the last time we were here, we didn't know the parties had

17    settlement.  And you said we're worried about future litigation

18    and you want clarity in the bar order.  I think that same

19    principle applies here simply because the first half of the bar

20    order and the second half of the bar order seem to be at odds.

21    And I respectfully would enter that should we go ahead and sue

22    GSO on aiding and abetting, this bar order would be thrown

23    right back at us.  And that is --

24         THE COURT:  You can always quote the transcript.  It's

25    not the intent of the parties.

1        MR. LORENZO:  We can always pull the transcript, but I

2    think, if a Court -- and unfortunately, or likely, it would be

3    a different Court who would be looking at this bar order and

4    reading it -- I think the plain language of the bar order is at

5    best inconsistent.

6        MR. LODEN:  Your Honor, if I may?

7        THE COURT:  Why don't you just use the language that I

8    had suggested in the decision that bars creditors of the estate

9    from recovering their claims against GSO where their claims are

10   based on the debtor's misconduct and there's no independent

11   basis for an action against GSO other than its receipt of the

12   transfers from LLP?

13       MR. SHORE:  The only thing I wanted to do to fix that,

14   Your Honor, is address what it means to be independent.  And I

15   interpreted independent to mean, in that instance, based on

16   something other than the fact that you were a creditor or

17   party-in-interest in the case.

18       THE COURT:  Well, you have to have a direct claim.

19       MR. SHORE:  Yeah.

20       THE COURT:  You have to have a claim with your own

21   injury, not an injury that's suffered by the estate.

22       MR. SHORE:  That's right.  And that's what -- if

23   that's what we want to pencil in for what "independent" means,

24   I think that's right.  You've got to have something that is

25   particular to you.  It's really this derivative shareholder

liability concept.  Right.

THE COURT:  That's, right now, barred by the automatic

stay.

MR. SHORE:  Right.

THE COURT:  Does that clarify it for you?

MR. LORENZO:  I think the discussion today does, but I

don't think the bar order, necessarily, is clarified.

MR. LODEN:  Your Honor, if I may, it's our intent, as

well, that the types of aiding and abetting claims that the

Court has focused on would not be covered by the bar order.

THE COURT:  Why can't he --

MR. LODEN:  And to the extent that Gardi has language

it would like to see to get clear, beyond what's been stated on

the record, we're happy to take a break and consider that

language.

THE COURT:  The language does say that it doesn't bar

direct claims under non-bankruptcy law.  If somebody has a

direct claim under New York law as opposed to a claim that the

estate was injured, we all know what that means, and there's a

lot of case law that's -- it seems to me -- I used independent,

but that seems to be what everybody's understanding is.

MR. SHORE:  Yeah, and that's -- the problem is, again,

what it means to be a direct claim.  He has a direct claim

under New York law for fraudulent conveyance.  If his argument

is it was my property and he gave it to Dreier, and you took it

1    from Dreier with knowledge, right, that would be a direct

2    claim.  So it's not just direct claim.

3              THE COURT:  Well --

4              MR. SHORE:  It's a claim which is as to which Gardi

5    suffered a particularized injury that was not suffered by the

6    creditor body as a whole.

7              THE COURT:  Well, initially, that direct claim is

8    barred by the automatic stay -- or, it was stayed by the

9    automatic stay.

10             MR. SHORE:  It's a stay, right.  What we're doing is

11   barring actions going forward.

12             THE COURT:  Right, well, the kind -- really, what I

13   had suggested was you can just extend the automatic stay and

14   make it permanent as to these kinds of claims.  Otherwise, you

15   can never settle.

16             MR. SHORE:  I agree.

17             THE COURT:  Which is essentially what the Drexel case

18   was talking about in the Second Circuit.  Look, my own feeling

19   is that you're not going to satisfy him.  He's not interested

20   in being satisfied.  But the language is confusing.

21             MR. SHORE:  Okay.

22             THE COURT:  Some is written in the conjunctive, and

23   maybe it should be the disjunctive when you're talking about

24   misconduct, and it's got to be based on -- or, it's not based

25   on --

1          MR. SHORE:  It's got to be --

2          THE COURT:  -- Dreier's misconduct or the receipt of

3    the note funds, and it's -- I did find that a little confusing.

4    I suspect you're not intending to cut off the types of claims

5    that Gardi has raised and has argued about other than the

6    fraudulent transfer language, I have no problem with dealing

7    with expressively, and that's what Colonial Realty was dealing

8    with.

9          MR. SHORE:  Right.

10         THE COURT:  But it's not the most artfully drafted.  I

11   understand it was negotiated.  More stuff got piled in, rather

12   than taken out.  That's part of the problem with it.  And we

13   can clarify his concerns today, but we may not clarify concerns

14   of somebody else if there is somebody else out there years from

15   now.

16         MR. SHORE:  I would -- if I could, I mean, here's what

17   I think we're talking about right now.  If we go to that last

18   sentence, "the bar order shall not bar any claims or causes of

19   action that are (1) unrelated to such third party status as

20   creditors or parties-in-interest in the bankruptcy cases,"

21   which is what we've been talking about, right?  If you're a

22   creditor injury, you're channeled in.  And -- or, take out the

23   "and" there -- (2) not based on the misconduct of Marc Dreier

24   or the GSO releasees receipt in the note fraud funds".  And

25   then I think we add in this concept, then, which is what I was

1    penciling down as I was hearing it before, "and (3), for which

2    the third party has an independent basis for an action against

3    the GSO releasees."  So if you've got an independent basis,

4    it's not just because you're a creditor or party-in-interest in

5    the case --

6         THE COURT:  Independent basis --

7         MR. SHORE:  -- and it's based on this conduct we're

8    talking about:  the transfers, the receipt, the fraud by the

9    debtors.  If you've got all three of those, that's where it is.

10   So if they've got an aiding and abetting claim, right, that is

11   a claim -- which is based on a specific injury, that -- with

12   respect to this transaction --

13        THE COURT:  Well, it's a direct claim --

14        MR. SHORE:  Right.

15        THE COURT:  -- under non-bankruptcy law.

16        MR. SHORE:  Right.  But it's got to be, again, this

17   is -- that it's not just a creditor injury we're talking about.

18   If the allegation is that GSO, right, actively participated in

19   Marc Dreier going out and settling that lawsuit and paying the

20   money, that's a different --

21        THE COURT:  That's an easy one because under

22   Ionosphere, that is being settled by the estate.  That's an

23   estate claim; the estate is settling that claim.  And that's a

24   bar to any third party bringing a derivative claim for an

25   estate injury.

1          MR. SHORE:  Right.  No, but nobody --

2          THE COURT:  You don't even need a bar order for it.

3          MR. SHORE:  No, no, I'm saying, look, here's the

4     allegation, right?  If the allegation is that GSO actively

5     participated in the fraud, active substantial assistance is

6     gave note money to Mr. Dreier, if that's the only allegation,

7     you gave note money to Mr. Dreier and that was the substantial

8     assistance in my -- Marc Dreier having stolen my money, I don't

9     think -- I think that is barred by the bar order.  That does

10    not fit.  That is just a generalized creditor injury.  Anybody

11    who gave money to Marc Dreier in that instance would be fit

12    under that definition.

13         What we're talking about is if there is an action

14    where he claims that in connection with my particular funds

15    that came in, you assisted in Marc Dreier settling that

16    lawsuit, you assisted in funding that lawsuit, you took that

17    money with knowledge, all those things are alleged, I think

18    that does not fit the definition I just read, then.  That would

19    then take the claim outside the bar order, and I think that

20    addresses Your Honor's concern.  Look, if GSO -- and it wasn't;

21    let me say that on the record -- actively involved in any of

22    this and was something other than the party who gave money to

23    the guy and took money back from the guy, which is being

24    settled here, they think they can allege it, there's nothing we

25    can do, any of us can do to stop them from alleging that no

1    matter what bar order you enter, Your Honor.

2         So that's where I see it.  I think if we add in that

3    concept at the end, that it is an independent claim, you know,

4    that brings in your language, or we can use derivative.

5    However we want it, you know, that it's not a derivative claim.

6    And that brings in this concept that you can't -- if

7    fundamentally it seems unfair, if we're paying money in to

8    resolve the injury that was caused to the estate and its

9    creditors, and they've had an opportunity to say to Your Honor

10   it's not enough money, and Your Honor has said it is enough

11   money to meet the 9019 standards, then in fairness, they should

12   be looking to that pot for their creditor injury.  If they have

13   something in injury that's not as a creditor, they're going to

14   do what they're going to do with it.

15        THE COURT:  Look, subject to seeing the revised

16   language, I'm prepared to approve the settlement.  I've already

17   ruled that the settlement is reasonable, that it falls within

18   the lowest point in the range of the level of the close range

19   of reasonableness.  But I do want to see this language -- as I

20   suggested, it's not so artfully drafted.  Maybe when you're

21   redrafting it, you can make the paragraphs smaller, rather than

22   larger and add more synonyms for claims, causes of action,

23   equity, and law and whatever else you have, all right?  Settle

24   a proposed order on notice to Mr. Gardi's counsel.  And if you

25   have an objection --

1          MR. LORENZO:  Your Honor -- Your Honor, I'd only

2     propose that, to save Your Honor's time, if it was simply

3     circulated to us before --

4          THE COURT:  Well, that's another possibility.  If you

5     can get them to agree to the language, then you can submit an

6     order and make a written representation that Gardi and

7     Interactive (sic) have no objection to the form of the order.

8     I understand they still have objections to what's going on and

9     they'll file a notice of appeal and they'll reserve that.

10         Yes, sir.

11         UNIDENTIFIED SPEAKER:  Your Honor, as you are aware,

12    this is both a joint motion for the Dreier estate.

13         THE COURT:  And you were very eloquent in the way you

14    were --

15         UNIDENTIFIED SPEAKER:  I've taken my measure as Your

16    Honor knows.

17         THE COURT:  Okay.

18         UNIDENTIFIED SPEAKER:  So anyway, Your Honor, we also

19    would ask for the same relief in the Dreier case, and the same

20    argument, I note, would be echoed in both cases.

21         THE COURT:  Okay, then I will echo the same comments I

22    made during the prior presentation.

23         UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

24         MR. LODEN:  Your Honor, one other point.  There's

25    actually two settlement agreements before the Court today.

1    There was the coordination agreement with the government.  We

2    would ask, if the Court is prepared to do it, to order that the

3    coordination agreement is approved subject to submission of the

4    revised GSO --

5         THE COURT:  Well, when I said the settlement agreement

6    is approved, I really meant both agreements.  They're linked.

7         MR. LODEN:  Okay.

8         THE COURT:  And you know what I'm telling you.  I

9    never had a problem with the coordination agreement and no one

10   ever objected to it.

11        MR. LODEN:  That's correct, Your Honor.

12        THE COURT:  Okay, Thank you very much.

13        MR. LODEN:  Your Honor, may I approach for one second,

14   though?

15        THE COURT:  Yes.  I hope this is not on this case.

16        (Proceedings concluded at 10:51 AM)

17

18

19

20

21

22

23

24

25

1

2                        I N D E X

3

4                           RULINGS

5                               Page      Line

6   Chapter 11 Trustee's        30        16

7   Motion to Approve

8   Compromise (Renewed)

9   Pursuant to Section 105(a)

10  of the Bankruptcy Code and

11  Rule 9019 of the Federal

12  Rules of Bankruptcy Procedure,

13  for Approval of Certain

14  Agreements Granted

15  Subject to Approval of

16  Revised Language

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

I, Dena Page, certify that the foregoing transcript is a true

and accurate record of the proceedings.


_____

Dena Page


Veritext

200 Old Country Road

Suite 580

Mineola, NY 11501


Date:  May 28, 2010