1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 08-15051-SMB; 09-10371-SMB

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7    DREIER LLP,

8             Debtor.

9    - - - - - - - - - - - - - - - - - - - -x

10   In the Matter of:

11   MARC S. DREIER,

12            Debtor.

13   - - - - - - - - - - - - - - - - - - - -x

14

15                 United States Bankruptcy Court

16                 One Bowling Green

17                 New York, New York

18

19                 June 30, 2010

20                 2:11 PM

21

22   B E F O R E:

23   HON. STUART M. BERNSTEIN

24   U.S. BANKRUPTCY JUDGE

25

1

2    HEARING re Gardi Parties' Emergency Motion for a Stay Pending

3    Appeal.

4

5    HEARING re Order to Show Cause signed on 6/23/2010 (case number

6    08-15051).

7

8    HEARING re Order to Show Cause signed on 6/23/2010 (case number

9    09-10371).

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sharona Shapiro

1

2   A P P E A R A N C E S :

3   LAMONICA, HERBST & MANISCALCO LLP

4        Attorneys for Sal LaMonica, the Chapter 7 Trustee

5        3305 Jerusalem Avenue

6        Wantagh, NY 11793

7

8   BY:   GARY F. HERBST, ESQ.

9

10  DIAMOND MCCARTHY LLP

11       Attorneys for Chapter 11 Trustee

12       620 Eighth Avenue

13       39th Floor

14       New York, NY 10018

15

16  BY:   STEPHEN T. LODEN, ESQ.

17       HOWARD D. RESSLER, ESQ.

18

19  KLESTADT & WINTERS, LLP

20       Attorneys for Official Committee of Unsecured Creditors

21       292 Madison Avenue

22       17th Floor

23       New York, NY 10017

24

25  BY:   JOSEPH C. CORNEAU, ESQ.

1

2   WHITE & CASE

3        Attorneys for GSO Capital Partners LP

4        1155 Avenue of the Americas

5        New York, NY  10036

6

7   BY:   JULIA M. WINTERS, ESQ.

8        J. CHRISTOPHER SHORE, ESQ.  (TELEPHONICALLY)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1               P R O C E E D I N G S

2          THE CLERK:  All rise.

3          THE COURT:  Please be seated.

4          Dreier.

5          MR. LODEN:  Good morning, Your Honor.  Steve Loden on

6     behalf of the Chapter 11 Trustee.  Good afternoon.

7          THE COURT:  Good afternoon.

8          MR. LODEN:  I'm used to mornings.

9          MR. LORENZO:  Good afternoon, Your Honor.  Alex

10    Lorenzo on behalf of the Gardi parties, Paul Gardi and Alex

11    Interactive Media.

12         MR. HERBST:  Good afternoon, Your Honor.  Gary Herbst

13    from LaMonica, Herbst & Maniscalco on behalf of Sal LaMonica,

14    the Chapter 7 Trustee for the Marc Dreier estate.

15         MS. WINTERS:  Good afternoon.  Julia Winters, White &

16    Case for GSO.

17         MR. CORNEAU:  Good afternoon, Your Honor.  Joseph

18    Corneau, Klestadt & Winters for the committee.

19         THE COURT:  Go ahead, Mr. Lorenzo.

20         MR. LORENZO:  Your Honor, as stated in our papers,

21    this motion was filed in an abundance of caution.  In reviewing

22    the GSO settlement agreement and Your Honor's order of June

23    9th, we identified a potential ambiguity, and the concern was

24    that even were we to be successful on appeal there would be an

25    argument about equitable mootness.

1        We received the papers last night, and it appears that

2   all interested parties who responded indicated that there would

3   be no payment and that there would be no reliance on the bar

4   order.  And thus, assuming that counsel here today will state

5   on the record that that is the case, I think this issue may be

6   resolved.

7        THE COURT:  Well, I know there'll be no payment and no

8   exchange of releases, but let me hear about the bar order.

9        MR. LODEN:  Your Honor, the bar order does not have

10  any language that says effectiveness is stayed or delayed.  The

11  bar order has been effected since June 8th and Gardi has been

12  barred by the bar order since June 8th.  They waited fifteen

13  days to bring this emergency stay motion, not to assert an

14  irreparable harm because there isn't one, to bring delay and to

15  cause pain on the estate.  That's why they brought this.  The

16  bar order's already effective, they're already stayed, they are

17  way late in making this so-called emergency motion seeking this

18  relief now.

19       THE COURT:  Why are they late?

20       MR. LODEN:  I'm sorry, Your Honor?

21       THE COURT:  Why are they late?  Has something occurred

22  that would moot their motion?

23       MR. LODEN:  If they truly believe that they would be

24  irreparably harmed by enforcement of the bar order, this motion

25  should have been filed on the 8th or 9th.  They waited two

1   weeks.  And yesterday they asked the judge in the District

2   Court to delay briefing on the appeals.  This isn't about

3   irreparable harm or any fear that they will be enjoined; they

4   already are.  This is about delay.

5          THE COURT:  Mr. Lorenzo, I agree that the bar order is

6   presently in effect and isn't based upon the payment.

7          MR. LORENZO:  Your Honor --

8          THE COURT:  The trustee doesn't have to deliver it, or

9   the trustees don't have to deliver their own releases until

10  they get paid.  But the bar order's in effect.

11         MR. LORENZO:  Well, and I think the point that Mr.

12  Loden raised, we're not worried about ourselves arguing that

13  we're somehow equitably moot from challenging.  If the bar

14  order applies to use we understand that.  The concern is that

15  some other interested party would get up on appeal and argue

16  that somehow our appeal did not have merit because the whole

17  issue was moot.  So that is the concern raised and that's the

18  irreparable harm.

19         THE COURT:  What issue is moot?

20         MR. LORENZO:  That the issue of -- you know, we -- as

21  you understand, Your Honor, we respectfully disagree with the

22  decision reached in the --

23         THE COURT:  But if you win, the settlement order gets

24  vacated and so would the release.

25         MR. LORENZO:  Well, if that is the case, Your Honor,

1    then that issue is resolved.

2              THE COURT:  But how could it not be?

3              MR. LORENZO:  Well, there was a concern that perhaps

4    GSO would act in reliance of the bar order and take actions and

5    then argue on appeal that they had acted in reliance on the bar

6    order and that their actions could not be undone.  This is --

7              THE COURT:  Well, you didn't make that argument in

8    your papers.

9              MR. LORENZO:  Well, we argued that there would be

10   reliance on the bar order, Your Honor.

11             THE COURT:  You argued that GSO would rely on the bar

12   order?  I don't recall that argument.  I thought you just made

13   a general statement that it would be a permanent injunction

14   barring claims against GSO.  But I think you ought to raise

15   your own rights and not somebody else's rights.  Isn't that --

16             MR. LORENZO:  Well, Your Honor, the concern was in

17   protecting our own rights that this was an issue of

18   uncertainty.  And unlike the Verition settlement agreement

19   where the settlement monies clearly go into escrow, here

20   there's some uncertainty as to what happens.  I understand that

21   the release state does not occur until the order is final and

22   nonappealable.  But the payment could occur.

23             THE COURT:  Why would they pay him?  Then they'd have

24   to chase the trustee for the money.

25             MR. LORENZO:  Your Honor, perhaps they're looking to,

1    you know, jam us out by paying early and then arguing mootness.

2         THE COURT:  Teach you a lesson so they're out a

3    release of nine and a half million dollars?

4         MR. LORENZO:  I can't speak for other parties.

5         THE COURT:  All right.

6         MR. LORENZO:  I know that we are not --

7         THE COURT:  So you started out, I thought, saying that

8    somehow this whole argument is academic, but now you're saying

9    it's not.  So let me hear your argument.

10        MR. LORENZO:  Well, the point that I made earlier --

11        THE COURT:  What's the relief you want today?

12        MR. LORENZO:  Your Honor, we have asked for a stay.

13   In viewing the responses that were filed last night, it appears

14   that all interested parties have indicated that there will be

15   no reliance and the GSO will not be making payment.

16   Assuming --

17        THE COURT:  All they said is GSO will not be making

18   payment, which as I read the settlement means that the trustees

19   will not be delivering a release.

20        MR. LORENZO:  Understood, Your Honor.

21        THE COURT:  Okay.  And that's what GSO said and that

22   is what the parties said GSO said.  That's not what you're

23   saying.

24        MR. LORENZO:  The concern is if there's an argument

25   made by any party that there was reliance on a bar order.  My

1  understanding of reading the objections to our motion was that

2  there was in indication that there would not be reliance on

3  that.  But if counsel --

4           THE COURT:  That's not what it says.  You misread it.

5           MR. LORENZO:  I apologize --

6           THE COURT:  Why do they have to stand up and say you

7  misread it?

8           MR. LORENZO:  I apologize then, Your Honor.  Then the

9  relief we are seeking is to prevent anyone from relying on the

10  bar order pending appeal.

11           THE COURT:  Where do you say that in your motion?

12           MR. LORENZO:  I believe, Your Honor -- let me just

13  flip -- on page 11.

14           THE COURT:  Okay, I'm looking at page 11.

15           MR. LORENZO:  At the top, second sentence down, "And

16  two, the bar order will become effective and creditors and

17  parties including Gardis will be permanently enjoined and

18  barred from commencing any action against the GSO parties.  The

19  consummation or execution of either act may render moot the

20  outcome of the Gardi parties' appeal."

21           THE COURT:  How can it render the Gardi parties'

22  appeal moot though?

23           MR. LORENZO:  The concern would be -- and obviously

24  this is in abundance of caution and to protect rights -- that

25  there would be a reliance by GSO or some other party --

1          THE COURT:  How?

2          MR. LORENZO:  Perhaps they -- they make a filing or

3    they make a business decision based on the fact that they

4    believe that the Gardi parties and any other party is barred

5    from suing them.

6          THE COURT:  Like what decision?  You don't say any of

7    this in your papers, you know.

8          MR. LORENZO:  I can't --

9          THE COURT:  Anything else you don't say that you want

10   to tell me now?

11         MR. LORENZO:  Your Honor, the concern was that

12   they would take some sort of action on reliance of the bar

13   order.

14         I think the other point to be raised is it's sort of

15   two sides of the same issue where they say that there's no need

16   for this because no one is going to act in reliance and no

17   monies are going to be paid.  They can't argue at the same time

18   that there is any issue then with staying the entry of the

19   order if no one is going to rely on it or --

20         THE COURT:  That's not what they say though.  You keep

21   saying that and that's not what they said.  The order has many

22   parts.  One of the parts involves a payment by GSO and, for

23   lack of a better phrase, a simultaneous delivery of releases.

24         MR. LORENZO:  Understood, Your Honor.

25         THE COURT:  That's one part of the order, and that

1    apparently is not going to occur until there's a final order.

2    But there are other parts of the order that are immediately

3    effective and don't depend on payment.

4            MR. LORENZO:  And my understanding of the other two

5    parts were there's a coordination agreement with the government

6    and then there's the bar order.  And the points --

7            THE COURT:  The coordination agreement just depended

8    on my approving the settlement agreement which I did.  So

9    that's --

10           MR. LORENZO:  Right, and we have not raised that as an

11   issue, Your Honor.  The two points that we raised in our papers

12   were the payment and the bar order.

13           THE COURT:  But all you say about the bar order is

14   that the bar order will become effective and creditors and

15   parties-in-interest and parties including the Gardi parties

16   will be permanently enjoined and barred from commencing any

17   action against the GSO parties.  You don't say anything about

18   reliance here or that it will become moot because third parties

19   will change their positions.

20           I'm not concerned about GSO; it's a party to the

21   appeal and what it does it does at its risk.  And usually

22   equitable mootness arises because there are third parties that

23   change their position, stock is issued under a plan or

24   something like that.  But I don't see that here.  Nobody else

25   has come in and raised a concern of being prejudiced.  So tell

1    me how Gardi's going to be prejudiced.

2            MR. LORENZO:  And I think that circles back.  The

3    concern was an abundance of caution that the party would appear

4    and argue prejudice.  Having filed this motion and received the

5    responses from the four interested parties, none of them have

6    indicated that they would --

7            THE COURT:  Okay.  Are you still pressing your motion?

8            MR. LORENZO:  Subject to counsel having filed

9    objections indicating that they stand by their papers, our

10   understanding is that the issue may be resolved, Your Honor.

11           THE COURT:  Okay.  So let me -- before you respond,

12   you've read their papers?

13           MR. LORENZO:  Yes.

14           THE COURT:  Are you still seeking a stay pending

15   appeal?

16           MR. LORENZO:  The only issue, Your Honor, would be if

17   there was -- if our interpretation -- and you've indicated that

18   perhaps it is incorrect.

19           THE COURT:  The papers say what they say.  You've read

20   the papers.  Are you still pressing your motion?

21           MR. LORENZO:  We are because of the uncertainty --

22           THE COURT:  Okay, fair enough.  Let me hear from the

23   other parties.  I didn't mean to cut you off --

24           MR. LORENZO:  No, no, no.

25           THE COURT:  -- is there any argument you want to make

1    with respect to your motion?

2              MR. LORENZO:  No, Your Honor, we stand on our papers.

3              THE COURT:  Okay, fine.

4              MR. LODEN:  Your Honor, it's very simple.  As the

5    Court pointed out, if the bar order is reversed on appeal, the

6    bar order is of no effect.  There's no irreparable harm in

7    the bar order being effective now pending resolution of the

8    appeal.

9              Counsel repeatedly said that at least the Chapter 11

10   Trustee has said in her papers that we will not be relying on

11   the bar order or a reliance on the bar order.

12             THE COURT:  How would you --

13             MR. LODEN:  That word does not appear.

14             THE COURT:  The bar order runs to the benefit of GSO.

15   It doesn't run to your benefit.  How are you going to rely on

16   the bar order?

17             MR. LODEN:  We can't.  It doesn't appear in --

18             THE COURT:  It doesn't -- the bar order doesn't affect

19   you.

20             MR. LODEN:  It -- other than our ability to consummate

21   the settlement, that's exactly right.  To the extent that

22   counsel would have it that we should come in and demonstrate

23   that we won't be harmed by a stay, that's not the standard.

24   The standard is they have to show that they will be irreparably

25   harmed, amongst other things that the committee and other

1    parties have pointed out.

2         Their pleading is woefully inadequate on all of those

3    points.  So pick and choose which reason to deny it but at the

4    end of the day it should be denied.  They have not met the

5    burden.

6         THE COURT:  Okay.

7         MR. HERBST:  Your Honor --

8         THE COURT:  Yes?

9         MR. HERBST:  -- very briefly.  And I'm sure GSO will

10   speak to this, but the real answer here is they're looking for

11   a commitment that GSO and the trustees won't come to some

12   agreement in the future, I guess, that the payment will be

13   made.  That's not required.  And if that payment ever does

14   get made, GSO does it at its own risk.  They know about the

15   appeal.

16        THE COURT:  Well, he's not saying that.  He's saying

17   that but he's saying really that he's concerned GSO will do

18   something in reliance on the release which will affect the

19   rights of third parties and then somebody will come in and say

20   that can't be unwound.

21        MR. HERBST:  Well, I think it's clear if Your Honor's

22   decision were to get reversed on appeal then it's vacated.  And

23   their reliance of that would be a tremendous stretch.

24        THE COURT:  But it doesn't get --

25        MR. HERBST:  And I'm not --

1          THE COURT:  -- it doesn't get vacated on appeal if it

2     becomes equitably moot because you can't unscramble the egg.

3     That's the argument.

4          MR. HERBST:  I think the real problem is GSO would be

5     likely liable for making the payment and then have to, as you

6     said, chase the trustees or have to be potentially liable for a

7     second go round if they made the payment.  They said they're

8     not going to, but I don't think that it should be a condition

9     of them withdrawing their argument or Your Honor denying the

10    motion.

11         THE COURT:  Yes?

12         MS. WINTERS:  Just to clarify GSO's position.  As we

13    stated in our papers, we have no intention of paying the

14    settlement amount before the Gardi appeal runs its course.  I'm

15    not sure what other action on reliance of --

16         THE COURT:  Somebody sues you, you'll say you have a

17    release, that's what you'll say, and that way you'll rely on

18    it.

19         MS. WINTERS:  Other than that, we will await the

20    appeal and consider the rest of the order effective until such

21    time as its either confirmed or reversed on appeal.

22         THE COURT:  Okay.  Yes, sir?

23         MR. CORNEAU:  On behalf of the committee, very

24    briefly.  We join in the trustee's argument, obviously, but

25    think it's important to point out that -- or to add to the fact

1    that the Gardi parties failed to meet three of the four prongs

2    for a stay pending appeal, not just one.  In any event, the

3    test is they have to meet all four.  And --

4         THE COURT:  You think they really have to convince me

5    that I think I'm going to be reversed?  That's a pretty tough

6    argument to win.  It would never be a stay pending appeal if

7    that were the question.

8         MR. CORNEAU:  I'm just going to add, Your Honor, that

9    the pleading is inadequate.  It just doesn't meet the test.

10        THE COURT:  Okay.

11        MR. CORNEAU:  Thank you, Your Honor.

12        THE COURT:  Anyone else?

13      (No audible response)

14        THE COURT:  By order dated June 8, 2010, hereinafter

15   the Settlement Order, the Court approved the settlement

16   embodied in two agreements described at length in the Court's

17   April 28, 2010 decision.

18        The agreement between the trustees and GSO Capital

19   Partners requires GSO to pay 9.5 million to the trustees in

20   exchange for releases from the trustees.  In addition, the

21   Settlement Order includes a provision barring certain third

22   party claims against GSO.  GSO is not required to transfer

23   settlement proceeds until the Settlement Order becomes final

24   and nonappealable.

25        Paul Gardi and Alex Interactive Media, LLC,

1    collectively Gardi, appealed from a settlement order and now

2    seek a stay pending appeal of so much of the Settlement Order

3    as approved the settlement with GSO and apparently also bars

4    third party claims.

5          The stay is denied for the reasons that follow.  When

6    deciding a motion for a stay pending appeal a Court must

7    consider four factors.  One, whether the movant has made a

8    strong showing of likelihood of success on the merits.  Two,

9    whether the movant will be irreparably injured absent the stay.

10   Three, whether the issuance of the stay will substantially

11   injure the other parties-in-interest in the proceeding.  And

12   four, where the public interest lies.  In re DJK Residential,

13   LLC, 2008 WL 650389, at 2 (S.D.N.Y. Mar. 7, 2008).  The movant

14   bears the burden of establishing his right to a stay, Id.

15         Initially, Gardi has failed to demonstrate, as he

16   must, a substantial possibility of success on appeal.  See

17   Hirschfeld v. Board of Elections, 984 F.2d 35, 39 (2d

18   Cir.1993).  Gardi's motion repeats the same arguments I

19   considered at length and rejected in a forty-two page decision.

20         The aspects of the decision that most concern Gardi

21   relied on two decisions rendered by Judge Rakoff on

22   substantially similar questions, second Circuit law addressing

23   the treatment of Ponzi scheme victims in equitable

24   receiverships and recent Second Circuit precedent relating to

25   the enforceability of constructive trusts in bankruptcy

1  proceedings.

2        Gardi does not suggest that I overlooked any arguments

3  or controlling law.  He merely disagrees with the outcome.

4  Suffice it to say that if I thought he was right then I would

5  have decided the matter differently, and the possibility that I

6  was wrong is not enough to carry his burden on this element.

7        More important, Gardi has failed to demonstrate that

8  he will be irreparably harmed absent a stay.  "A showing of

9  irreparable harm is the principal prerequisite for the issuance

10  of a stay under Bankruptcy Rule 8005."  DJK, 2008 WL 650389, at

11  4, (citations omitted).

12        Gardi is concerned that his appeal will become moot

13  because, one, GSO will pay the settlement and the trustees will

14  release GSO; and two, the bar order in the release will

15  permanently enjoin actions against GSO.  Gardi's concern is

16  remote and speculative and does not, therefore, rise to the

17  level of irreparable harm.  See In re Calpine Corp., 2008 WL

18  207841, at 4 (Bankr. S.D.N.Y. Jan. 24, 2008).

19        As noted, GSO is not obligated to fund the settlement

20  until the Settlement Order becomes final, and it has stated in

21  its opposition papers that it has no intention of paying until

22  then.  In other words, the mere filing of the noticed appeal

23  state payment by GSO and a release by the trustees.

24        Even if GSO waived the condition of finality and paid

25  the trustees, the transaction could be unwound if the

1    Settlement Order was reversed; the trustees would repay GSO and

2    the release they delivered would be void.  If the trustees

3    could not repay GSO that would be GSO's problem.  The finality

4    requirement of the settlement agreement protects GSO against

5    that possibility.  And if GSO pays before then, it does so at

6    its own risk.

7            Gardi's concern about the part of the Settlement Order

8    that bars third party claims against GSO is even weaker.  If

9    the Settlement Order is vacated the injunction will also be

10   vacated and Gardi would be free to sue GSO, subject, of course,

11   to the automatic stay.  His concern expressed at oral argument,

12   though not in his papers, that GSO could rely on a release and

13   thereby moot the appeal is rank speculation.

14           As to the public interest, I agree with Gardi that it

15   is served by, quote, "a fair and efficient bankruptcy system".

16   I also agree that, quote, "The approval of a settlement

17   agreement that contravenes the Bankruptcy Code is clearly

18   outside the public interest."

19           I disagree, however, that the public interest will be

20   served by staying the order because Gardi has failed to

21   demonstrate, both in his opposition to the original settlement

22   motion and in the current motion, that the order contravenes

23   the Bankruptcy Code.  Furthermore, there is a strong interest

24   in the finality of orders, particularly in bankruptcy cases.

25   Calpine, 2008 WL 207841, at 7.

1       Lastly, I agree with Gardi that a stay would not

2   substantially injure other parties-in-interest.  Nevertheless,

3   in weighing the four factors, and particularly given the

4   absence of irreparable harm, his motion for stay pending appeal

5   will be denied.  Submit order.

6       Anything else?

7       MR. LODEN:  Thank you, Your Honor.

8       THE COURT:  Thank you.

9       MR. LODEN:  If I understood the last part, we'll

10  submit an order?

11      THE COURT:  Submit an order.

12      MR. LODEN:  One other matter, as the Court may recall,

13  at the last hearing there was a discussion about Ms. Gowan's

14  schedule to appear at the continued hearing on the trustee's

15  agreement.

16      THE COURT:  Right.

17      MR. LODEN:  And we talked about a date late in July to

18  allow discovery to go forward.  What I wanted to raise with the

19  Court is that we have now responded to the document request

20  that Gardi served and Ms. Gowan is actually being deposed

21  tomorrow with respect to that matter.  So what we would suggest

22  is that it go on the calendar along with the Verition

23  settlement on July 15th.

24      THE COURT:  Have you spoken to Verition?  Is that

25  acceptable to Verition?

1    MR. LODEN:  Verition is already going to be here on

2    the 15th for their settlement agreement hearing.  That's what's

3    already on the 15th.

4    THE COURT:  Isn't that part of the Verition settlement

5    though?

6    MR. LODEN:  The trustee agreement?  No.  They're

7    completely separate.

8    THE COURT:  Oh, this is just with respect to the

9    trustee agreement?

10    MR. LODEN:  Correct, Your Honor, correct.

11    THE COURT:  All right.  Is July 15th all right with

12    Gardi?

13    MR. LORENZO:  Your Honor, unfortunately I'm actually

14    out that week.  I understood that it was going to be the

15    following week.

16    THE COURT:  All right.

17    MR. LORENZO:  I don't know if there's a date that's

18    available the following week?

19    MR. LODEN:  Your Honor, I'll be here that week from

20    Houston.  I know that other counsel for Gardi has appeared at

21    hearings as well.

22    THE COURT:  Well, you're springing this on him today.

23    He says he plans to be out that week.

24    MR. LORENZO:  Other parties have appeared for Dreier,

25    LLP -- Ms. Gowan also, Your Honor.

1      THE COURT:  Will you be available the next week, the

2  week of July 12th?

3      MR. LODEN:  I think it's the following week, Your

4  Honor --

5      THE COURT:  The 19th.

6      MR. LODEN:  -- the 19th.

7      THE COURT:  I'm sorry.

8      MR. LODEN:  The 22nd?

9      THE COURT:  Well, if there's going to be an

10  evidentiary hearing I'll put you on in the afternoon if it's

11  going to take time.  I'll put --

12      MR. LODEN:  Ms. Gowan's direct testimony is being

13  offered via proffer, so --

14      THE COURT:  I'll put you on the 22nd.  I don't have

15  many matters on now.  I don't know how crowded it's going to

16  get.  Just tell Ms. Parks so she'll put it on the calendar.

17      MR. LODEN:  Okay.

18      THE COURT:  Is that all right with everybody, the

19  22nd?

20      MR. LORENZO:  Yes.

21      THE COURT:  All right, 22nd at 10 o'clock.

22      MR. HERBST:  And I just need to check with Mr.

23  LaMonica but I'm available, Your Honor, and I'll just make sure

24  and I'll contact the parties if there's any problem.

25      THE COURT:  Okay.  All right.  Let us know if there's

1  a problem.

2          IN UNISON:  Thank you, Your Honor.

3          THE COURT:  Thank you.

4      (Proceedings concluded at 2:33 p.m.)

I N D E X

RULINGS

|                          | Page | Line |
|--------------------------|------|------|
| Motion for a Stay        | 18   | 5    |
| Pending Appeal Denied    |      |      |

1

2               C E R T I F I C A T I O N

3

4   I, Sharona Shapiro, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7   _____

8   Sharona Shapiro (CET**D-492)

9   AAERT Certified Electronic Transcriber

10

11   Veritext

12   200 Old Country Road

13   Suite 580

14   Mineola, NY 11501

15

16   Date:  July 2, 2010

17

18

19

20

21

22

23

24

25