LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue
Wantagh, NY 11793
(516) 826-6500
Gary F. Herbst, Esq.
Adam P. Wofse, Esq.
Holly Rai, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:  　　　　　　　　　　　　　　　　　　　　　　Chapter 7
　　　　　　　　　　　　　　　　　　　　　　　　　　Case No: 09-10371-SMB
MARC S. DREIER,

　　　　　　　　Debtor.
-------------------------------------------------------------------x

**CHAPTER 7 TRUSTEE'S MOTION UNDER RULE 3007 OF THE FEDERAL RULES
OF BANKRUPTCY PROCEDURE SEEKING ENTRY OF AN ORDER:
(I) DISALLOWING A PORTION OF CLAIM 14 FILED BY ELISA DREIER; AND
(II) RECLASSIFYING A PORTION OF CLAIM 14 FILED BY
<u>ELISA DREIER AS A GENERAL UNSECURED CLAIM</u>**

**To:** **The Honorable Stuart M. Bernstein
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York**

Salvatore LaMonica, Esq., the Chapter 7 Trustee (the "Trustee") of the estate of Marc S. Dreier (the "Debtor"), submits this motion (the "Claim Objection") seeking the entry of an Order, in accordance with Rule 3007 of the Federal Rules of Bankruptcy Procedure: (i) disallowing that portion of claim number 14 filed by Elisa Dreier ("Claim 14" or "Elisa Dreier's Claim") that was an unmatured domestic support obligation as of the filing of the bankruptcy petition; and (ii) reclassifying the balance of Claim 14 as a general unsecured, non-DSO claim against the Debtor's estate. A copy of Claim 14 is annexed as <u>Exhibit "A"</u>. In support of this Claim Objection, the Trustee represents and alleges as follows:

1

## INTRODUCTION

1. Notwithstanding the attempts to rewrite the lengthy divorce agreement Ms. Dreier has at best a general unsecured claim against the estate and does not have an unpaid Domestic Support Obligation claim. Indeed, the Trustee, by separate stipulation, paid Ms. Dreier her allowable, matured DSO claim. What remains of Elisa Dreier's Claim, as set forth below, is an unmatured claim that must be disallowed and a reduced general unsecured claim. Her bald argument of acceleration is completely devoid of any factual or legal support. As such, the Trustee is entitled to a determination of this Court disallowing that portion of Elisa Dreier's Claim that was an unmatured domestic support obligation as of the filing of the bankruptcy petition and to reclassify the balance of her claim as a general unsecured, non-DSO claim against the Debtor's estate.

## BACKGROUND

**A. Procedural Background**

2. On January 26, 2009 (the "Filing Date"), an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") was filed against the Debtor by the petitioning creditors, including the Chapter 11 Trustee, Wachovia Bank, N.A. and Steven J. Reisman, Post-confirmation Representative of the Bankruptcy Estates of 360networks (USA) Inc.

3. An Involuntary Summons was issued on January 28, 2009. The Involuntary Summons was served on the Debtor on January 30, 2009.

4. An Order for relief was entered on February 27, 2009.

5. By Notice of Appointment, dated March 2, 2009, Salvatore LaMonica, Esq. was appointed as the interim Chapter 7 Trustee of this estate. He has since duly qualified and is the permanent Trustee.

6. In or around May 2010, the Trustee and Sheila M. Gowan (the "Chapter 11 Trustee"), Chapter 11 Trustee for Dreier LLP reached a settlement between the two bankruptcy estates as to the potentially overlapping right, title, interest and/or standing to the same assets, including certain artwork, as well as to pursue various claims and causes of action, including claims and causes of action arising under chapter 5 of the Bankruptcy Code to avoid and recover transfers from accounts maintained by Dreier LLP (the "Trustees' Settlement"). Importantly, the Trustees' Settlement included mutual releases by the Trustee and the Chapter 11 Trustee, including any right, claim or interest in and to the assets of the other estate.

7. Paul Gardi and Alex Interactive Media, LLC (the "Gardi Parties") filed an objection to the Joint Motion.

8. A hearing on the Joint Motion was held on June 16, 2010 at 10:00 a.m. The Court continued the hearing to July 22, 2010 at 2:00 p.m. Thereafter, the Trustee and the Chapter 11 Trustee submitted supplemental pleadings in further support of the Joint Motion. The adjourned hearing was held and the Joint Motion was approved by an Order of this Court dated July 22, 2010.

9. Accordingly, now that the Court has approved the Trustees' Settlement and the release of the Chapter 11 Trustee's claims in and to the assets of the Debtor's estate, the Trustee believes that it is appropriate to have the Claims Objection heard and resolved by this Court.

B.   **Factual Background**

10.   The Debtor and Elisa Dreier ("Elisa Dreier" or "Ms. Dreier") were married in 1987. Subsequently, the Debtor and Elisa Dreier entered into a stipulation of settlement dated December 18, 2003 (the "Separation Agreement"), a copy of which is annexed as Exhibit "B". The Separation Agreement is a one hundred and five page document with twenty-four Articles and multiple exhibits. The Separation Agreement was executed by both Ms. Dreier and the Debtor and was clearly the product of extensive negotiations.

11.   The Separation Agreement provides, among other things, for maintenance and child support to be paid by the Debtor to Ms. Dreier and the couples' two (2) children, respectively. The Separation Agreement sets forth the deadlines by which these obligations were to commence. For example, the Separation Agreement provides that the child support payments were to be paid by the Debtor "[b]eginning on the first day of the first month after entry of a judgment of divorce in the Pending Divorce Action." See, Exhibit "B", 67 at ¶1. The child support payments were to conclude upon the emancipation of Jackie Dreier, the couples' second child. Similarly, the agreement provides that the monthly spousal support is to commence "on the 25th day of the calendar month in which a judgment of divorce in the Pending Divorce Action is entered." See, Exhibit "B", 79 at ¶2. The Separation Agreement provides that the spousal support payments were to continue through the first 96 months after the entry of the Judgment of Divorce at a certain rate, and then through the next 84 months thereafter at a lower rate.

12.   Importantly, the very lengthy Separation Agreement does not contain an acceleration clause of all of the obligations of the Debtor in the event of a default. At the hearing on the Trustee's application for allowance of commissions held on June 10, 2010, the Court observed, and counsel for Ms. Dreier agreed, that the Separation Agreement was entirely void of

the term "acceleration" or an acceleration clause. A copy of the transcript from that hearing is annexed as Exhibit "C".

13. Although the Separation Agreement was executed in December 2003, the judgment of divorce was not entered until on or about April 2008. This was the product of protracted litigation between the Debtor and Ms. Dreier wherein Ms. Dreier attempted to modify the Separation Agreement to, among other things, increase the sums to be paid to her. Ms. Dreier was unsuccessful in these attempts, and such adverse determinations were upheld against her. Notwithstanding Ms. Dreier's dispute over the Separation Agreement, it is the Trustee's understanding that, between December 2003 and April 2008, the Debtor made payments to Ms. Dreier in accordance with the Separation Agreement[1].

**C. Elisa Dreier's Claim**

14. On or about November 17, 2009, Ms. Dreier filed Claim 14 in the amount of $7,105,102.00. See, Exhibit "A". Under item no. 2., "Basis for Claim", Ms. Dreier wrote "Support and Maintenance". See, id. Under item no. 5, "Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a)", Ms. Dreier checked off "Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). See, id.

15. Annexed to Claim 14 is a Statement that includes a schedule detailing Ms. Dreier's calculation of the amounts due pursuant to the Separation Agreement (the "Schedule"). See id. As set forth in the Schedule, included in Ms. Dreier's calculation of Claim 14 are sums allegedly due based upon her reading of the Separation Agreement for child support, school-related expenses, future support and maintenance of Ms. Dreier, certain life insurance policies,

---

[1] The estate should receive a credit for the aggregate sum of payments made by the Debtor during the five (5) years he made payments to Ms. Dreier while Ms. Dreier unsuccessfully challenged the Separation Agreement.

home and auto insurance policies, and attorneys' fees totaling $5,879,117.00[2] (the "Unmatured DSO Portion"). See, id. As further set forth in the Schedule, no portion of the Unmatured DSO Portion of Claim 14 was due as of the Filing Date. Rather, the Unmatured DSO Portion was payable by the Debtor post-petition through as late as May 2016 and June 2023.

16. Finally, included in Ms. Dreier's calculation of Claim 14 are sums allegedly due and owing for "equitable distribution", including an "Initial House Payment" and a "Second House Payment" in the total amount of $1,119,500.00 (the "Equitable Distribution Portion"), which was matured as of the Filing Date.[3]

**D.**  **The Trustee's Stipulation with Elisa Dreier**

17. The Trustee disputed the validity, amount and priority of Claim 14. However, the Trustee agreed that, as of the Filing Date, Ms. Dreier did in fact have a *partial*, valid domestic support obligation, under section 507(a)(1)(A) of the Bankruptcy Code, in the amount of

---

[2] This sum excludes the Undisputed DSO Claim (as defined herein) in the agreed amount of $106,485.00, which was paid by the Trustee to Ms. Dreier in accordance with an order of this Court.

[3] While Ms. Dreier's Schedule does not set forth the date by which the Equitable Distribution Portion was to be paid, the Separation Agreement provides that:

> [F]or [Ms. Dreier's] one-half interest in the Westhampton House, the [Debtor] shall pay to [Elisa Dreier] an amount equal to 50% of the Appraised Value less only 50% of the principal balance of only the First Mortgage (which, as of the date of the execution of this Agreement, the [Debtor] warrants and represents is $301,000) (the "House Payment") as follows:
>
> (a) **Within 30 days after the judgment of divorce is entered** in the Pending Divorce Action (regardless of whether such appraisal has been completed), the [Debtor] shall pay to [Elisa Dreier] $250,000;
>
> (b) Insofar as the House Payment may exceed $250,000, the [Debtor] shall pay [Elisa Dreier] that excess amount **within 75 days after entry of the judgment of divorce** in the Pending Divorce Action.

See, Exhibit "B", 31, ¶62 (emphasis added). As set forth above, the judgment of divorce was entered in or around April 2008. Thus, the Debtor would have been required to pay to Elisa Dreier the $250,000.00 "House Payment" in or around May 2008 (within 30 days) and the balance in or around July 2008 (75 days). As such, the Equitable Distribution Portion of Claim 14 was matured as of the Filing Date. However, the amount of the "Second House Payment" is undetermined at this time. Ms. Dreier has not provided a copy of the appraisal and, as such, the Trustee is unable to verify her calculation of the sums due under the Separation Agreement.

6

$106,485.00 (the "Undisputed DSO Claim"). Specifically, Ms. Dreier had represented and warranted that, prior to the commencement of this case, she paid certain expenses that the Debtor was obligated to pay pursuant to the Separation Agreement.

18. After extensive negotiations, the Trustee and Ms. Dreier entered into a stipulation (the "Stipulation") concerning the Undisputed DSO Claim, a copy of which is annexed as Exhibit "D". The Stipulation was So Ordered by this Court on January 22, 2010.

19. As set forth in the Stipulation, the Trustee agreed that Ms. Dreier was entitled to reimbursement for the payment of certain expenses[4], which were the sole obligation of the Debtor under the Separation Agreement, and which arose prior to the Filing Date.

20. On or about February 12, 2010, and in accordance with the Stipulation, the Trustee duly paid Elisa Dreier the sum of $106,485.00 in full satisfaction of the amount of her Undisputed DSO Claim.[5]

### E. The Disputed Portions of Claim 14

21. As further set forth in the Stipulation, the Trustee and Ms. Dreier specifically reserved their rights with respect to the balance, after payment of the Undisputed DSO Claim, of Claim 14.

22. The Trustee and his counsel have reviewed the Separation Agreement, Claim 14 and the documents annexed to Claim 14. Based upon that review, the Trustee objects to Ms. Dreier's classification of Claim 14 as a section 507(a)(1)(A) or (a)(1)(B) claim. For the reasons set forth more fully below, the Unmatured DSO Portion of Claim 14 is non-dischargeable under

---

[4] Such expenses included health insurance for Ms. Dreier and the two (2) children, as well as medical, tutoring and tuition expenses for the children that arose prior to the Filing Date.

[5] It should be noted that notwithstanding the fact that the Trustee has paid Elisa Dreier the sum of $106,485.00, Ms. Dreier has not filed an amended claim reducing her previously filed claim nor has she amended the Schedule to reflect the amounts actually paid by her prior to the Filing Date.

7

section 523(a)(5) of the Bankruptcy Code and, pursuant to section 502(b)(5) of the Bankruptcy Code, is not allowable against the Debtor's estate. The balance of Claim 14, which is comprised of the Equitable Distribution Portion, is not entitled to priority under section 507(a)(1)(A) or (a)(1)(B) of the Bankruptcy Code because it relates to a division of martial property and is not in the nature of "alimony, maintenance or support". Thus, while it may have been matured as of the Filing Date, the Equitable Distribution Portion should be reclassified as a general unsecured claim against the Debtor's estate.

## BASIS FOR THE RELIEF REQUESTED

23. The term "domestic support obligation" was added to section 101 of the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The term is defined in section 101 (14A) as:

> [A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
>
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>
> (i) a separation agreement, divorce decree, or property settlement agreement;
> (ii) an order of a court of record …

11 U.S.C. § 101(14A).

24. If, at the time of a bankruptcy filing, a debtor owes a matured DSO, the DSO recipient may assert a claim for the DSO amount which was due prepetition. That is, "[t]o the extent . . . that a claim is for matured [DSO] payments unpaid at the time of the filing of the petition, the claim would be proper and would, therefore, be allowed to share in a distribution of the debtor's assets. Indeed, such a claim would be entitled to priority . . . ." 4 Collier on Bankruptcy, ¶ 502.03[6][a] (Matthew Bender 2005).

25. Such matured DSO claims are elevated to first priority payment in accordance with section 507(a)(1)(A) of the Bankruptcy Code, which provides in relevant part:

(a) The following expenses and claims have priority in the following order:

(1) First:

(A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative,

. . . .

11 U.S.C. § 507(a)(1)(A). Thus, an allowed, matured unsecured DSO claim is entitled to first priority.

26. On the other hand, if a debtor does not owe a matured, pre-petition DSO but will instead owe unmatured, post-petition DSOs, a different situation arises. Generally, section 101(5) of the Bankruptcy Code states that the term "claim" means:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; . . . .

11 U.S.C. § 101(5).

27. However, section 502(b) of the Bankruptcy Code specifically mandates the disallowance of a claim to the extent "such claim is for a debt that is unmatured on the date of

9

the filing of the petition and that is excepted from discharge under section 523(a)(5) of this title." 11 U.S.C. § 502(b)(5).

28. Thus, the "reach of section 502(b)(5) is to disallow any claim for a debt which is unmatured at the time of the filing of the petition, e.g. future alimony payments, but which is excepted from discharge under section 523(a)(5)." 4 Collier on Bankruptcy, ¶ 502.03[6][a] (Matthew Bender 2005). A claim for a DSO is excepted from discharge under section 523(a)(5) of the Bankruptcy Code.

29. Here, the Trustee and Ms. Dreier already reached an agreement as to the allowed, matured, unsecured DSO claim of Ms. Dreier entitled to first priority, i.e., the Undisputed DSO Claim. Again, the Trustee has paid Ms. Dreier the Undisputed DSO Claim in accordance with an order of this Court. The balance of Claim 14 is, with the exception of the Equitable Distribution Portion, an unmatured DSO that is excepted from discharge under section 523(a)(5) of he Bankruptcy Code.

### A. The Unmatured DSO Portion Of Claim 14 Must Be Disallowed

30. The plain language of section 507(a)(1)(A) dictates that the Unmatured DSO Portion of Claim 14 was not an allowed claim as of the Filing Date.

31. Unmatured claims for support that are non-dischargeable are not allowable against the assets of the bankruptcy estate. United States v. Sutton, 786 F.2d 1305, 1307 (5th Cir. 1986). Such post-petition obligations are collectible from the debtor personally from exempt or property acquired post-petition. Id. Further, as held by the Court in In re Haase, the term "unmatured" means "post-petition," and post-petition alimony, maintenance or support claims are non-dischargeable, and are to be paid from the debtor's post-petition property. In re Haase, 306 B.R. 415, 419 (B.A.P. 1st Cir. 2004).

32. The Bankruptcy Court for the Northern District of California addressed a very similar set of facts in an individual Chapter 11 case where the Debtor was the principal and sole shareholder of a company that operated a Ponzi Scheme. The Court's memorandum decision in In re Schneider, 2008 WL 4447092 (September 26, 2008) is extremely instructive. There, in deciding a final fee application of the Chapter 11 Trustee and all of the objections thereto, the Court considered the fact that it had denied a motion by the Chapter 11 Trustee to resolve a compromise with the Debtor's ex-wife of her future domestic support obligations in the amount of $2,875,000.00. See, id at *4. As set forth by the Court,

> Although the bulk of Mrs. Schneider's clam was based on future support, surprisingly, neither the motion nor the notice of hearing to approve the compromise mentioned § 502(b)(5), which disallows claims for non-dischargeable domestic support obligations that are unmatured as of the petition date. While the firm asserted that it considered this Code provision, it could not have given it due weight and still have concluded that the compromise was in the best interest of the estate. **Because the compromise represented a substantial recovery on a claim on which Mrs. Schneider was unlikely to prevail, I denied approval of the compromise as not fair and equitable.**

Id. (emphasis added). See, also, In re White, 2008 WL 682422 (Bankr. S.D. Miss. 2008) (Section 502(b) specifically mandates the disallowance of a claim for a debt that is unmatured on the petition filing date and that is excepted from discharge under section 523(a)(5) of the Bankruptcy Code).

33. Here, notwithstanding the Trustee's payment of the Undisputed DSO Claim, Elisa Dreier asserts that Claim 14 is entitled to priority under section 507(a)(1)(A) or (a)(1)(B) of the Bankruptcy Code. However, the Unmatured DSO Portion of Claim 14 represents a claim for a debt that was unmatured as of the Filing Date and that is excepted for discharge under section 523(a)(5) of the Bankruptcy Code.

34. While Elisa Dreier may argue that the collection of future support from the Debtor will be extraordinarily difficult since the Debtor is incarcerated, that unfortunate

11

circumstance neither warrants nor authorizes this Court to extend additional rights to her that do not exist under the Bankruptcy Code to the detriment of other creditors with allowed claims against the estate.

35.     Therefore, the Unmatured DSO Portion of Claim 14 cannot be sustained or allowed under section 502(b)(5) of the Bankruptcy Code because it represents a claim for sums due to her in the future, which sums were <u>not</u> due and owing to her as of the Filing Date and which sums are non-dischargeable.

**B.     The Equitable Distribution Portion Of Claim 14 Must Be Reclassified**

36.     The plain language of section 101(14A)(B) dictates that the Equitable Distribution Portion of Claim 14 is not a DSO because it is not "in the nature of alimony, maintenance, or support." Indeed, unlike the Unmatured DSO Portion, the Equitable Distribution Portion of Claim 14 relates to the distribution of marital property and not alimony, maintenance or support. As such, the Equitable Distribution Portion of Claim 14 should be reclassified as a general unsecured claim against the Debtor's estate.[6]

37.     For the Equitable Distribution Portion of Claim 14 to be considered a DSO, the Court must determine that the obligation (1) is owed to or recoverable by the Debtor; (2) is in the nature of alimony, maintenance, or support; (3) was established before the debtor filed for bankruptcy relief by a separation agreement or divorce decree; and (4) has not been assigned other than for collection purposes. 11 U.S.C. § 101(14A)(B); <u>see</u>, <u>also</u>, <u>In re O'Brien</u>, 339 B.R. 529, 531(Bankr.D.Mass.2006).

---

[6]     It should be noted that, under BAPCPA, the Equitable Distribution Portion of Claim 14 is non-dischargeable under section 523(a)(15) of the Bankruptcy Code, which excepts from discharge all debts incurred in the course of a divorce proceeding and owed to a spouse, former spouse, or child of a debtor. "In individual Chapter 7 and 11 cases 'the distinction between a domestic support obligation and other types of obligations arising out of a marital relationship [such as an award of attorneys' fees] is of no practical consequence in determining the dischargeability of the debt....' " <u>Gilman v. Golio</u> (<u>In re Golio</u>), 393 B.R. 56, 61 (Bankr.E.D.N.Y.2008). (<u>quoting</u> 4 Collier on Bankruptcy, ¶ 523.21 at 523-118 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.)).

12

38.     Here, it appears that the Equitable Distribution Portion of Claim 14 is owed by the Debtor to Ms. Dreier. As set forth above, it also appears that the Debtor's obligation to pay the Equitable Distribution Portion of Claim 14 was established before the Filing Date pursuant to the Separation Agreement and the entry of the judgment of divorce. And, upon information and belief, the Equitable Distribution Portion of Claim 14 has not been assigned other than for collection purposes. However, the final prong of the DSO analysis cannot be met, i.e., it cannot be shown that the Equitable Distribution Portion of Claim 14 is in the nature of alimony, maintenance or support.

39.     The complaining spouse has the burden to demonstrate that the obligation at issue is in the nature of alimony, maintenance or support. <u>Grogan v. Garner</u>, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); <u>In re Omine</u>, 485 F.3d 1305, 1320 (11th Cir.2007) (stating the burdened party needs to show that the parties intended the obligation as support); <u>Tilley v. Jessee</u>, 789 F.2d 1074, 1077 (4th Cir.1986). Ms. Dreier has not met this burden nor, as set forth below, does the Separation Agreement support such a conclusion.

40.     The Second Circuit has held that the question of whether a debt meets the statutory requirement for being in the nature of support is a factual determination of the bankruptcy court, and as such is subject to reversal only if clearly erroneous." <u>Falk & Siemer v. Maddigan</u> (<u>In re Maddigan</u>), 312 F.3d 589, 595 (2d Cir.2002).[7] "Whether a payment is alimony, maintenance or support within the meaning of section 523(a)(5) is a question of federal

---

[7]     As aptly noted by the Bankruptcy Court in <u>In re Johnson</u>, 397 B.R. 289, 296-297 (Bankr. M.D.NC 2008):

> DSO is a term derived from the definition of a nondischargeable debt for alimony, maintenance, and support contained in the former Section 523(a)(5); therefore, case law construing the former Section 523(a)(5) is relevant and persuasive. <u>Hudson</u>, 2007 WL 4219421 at *1; <u>In re Lepley</u>, No.07-20344, 2007 WL 2669128 at *2 (Bankr.W.D.Mo. Sept. 6, 2007) (2007 WL 2669128); <u>In re Knox</u>, No. 07-11082, 2007 WL 1541957 at *1 (Bankr.E.D.Tenn. May 23, 2007) (2007 WL 1541957); see <u>In the Matter of Dankert</u>, No. 07-40109, slip op. at 3 (Bankr.D.Neb. Sept. 27, 2007) (stating that BAPCPA did not change the standard for whether an obligation is in the nature of support).

bankruptcy law, not of state law. Although the status of a payment under state law is relevant to this determination, it is not dispositive." In re Brody, 3 F.3d 35, 39 (2d Cir.1993) (citations omitted).

41. Here, the Separation Agreement provides in Article II, entitled "Purpose of this Agreement", that:

> This Agreement is intended: (a) to set forth the parties' respective rights and obligations regarding (i) the distribution of their marital property; (ii) the amount and duration of maintenance and support of the Wife and the Children and (iii) custody and parenting time arrangements for the Children…"

See, Exhibit "B" at 3, ¶1.

42. The four corners of the Separation Agreement are clear: there are Articles addressing each of the above-stated intentions, i.e., distribute marital property, determine the child support and maintenance and establish the custody and parenting arrangements for the children. The obligation of the Debtor to pay the Equitable Distribution Portion arises under Article IV of the Separation Agreement, entitled "Residences". See, id., at 6. Article IV, which is comprised of 28 pages, addresses the Debtor and Ms. Dreier's treatment of the "Marital Apartment" and the "Westhampton Residence" and provides for, among other things, the payment of Ms. Dreier's equity in the Westhampton Residence by the Debtor. Accordingly, the obligation of the Debtor to pay the Equitable Distribution Portion thus relates to the distribution of their marital property and not "the amount and duration of maintenance and support of the Wife and the Children".

C. **There Is No Acceleration Under the Separation Agreement**

43. In prior submissions to this Court, Elisa Dreier has attempted to create a matured claim as of the Filing Date in connection with Claim 14 for the sums to become due for future

support based upon an "acceleration" of debt theory. However, no such basis exists within the four corners of the Separation Agreement.

44. Indeed, nowhere in the very lengthy document is there a provision for acceleration of the entire future support amount in the event of default.[8] Similarly, the four corners of the Separation Agreement are clear on this point as well. Given its breadth and extent, had there been a mechanism or intent for acceleration of these obligations, then the document would have clearly provided as such. The plain fact is it does not. An acceleration provision is a very simple clause to include in an agreement—especially one that spans over one hundred pages— if the parties to the agreement had wished to do so. Yet, it is not there.

45. Rather, the Separation Agreement contains certain provisions for the sale of certain real property in the event of a default of payment by the Debtor, along with certain applicable monetary penalties (i.e. $2,500). Nonetheless, full acceleration of all of the support sums is simply not provided for anywhere in the agreement.[9]

46. Furthermore, Ms. Dreier has argued in prior submissions to this Court, that her notice of default issued to the Debtor, dated December 24, 2008 (the "Notice of Default"), a copy of which is annexed as <u>Exhibit "E"</u>, accelerated her future DSO claim. Indisputably, however, the Notice of Default makes <u>no</u> mention whatsoever of acceleration of debt obligations under the Separation Agreement. Rather, the Notice of Default simply recites that the Debtor

---

[8] At the hearing on the Trustee's application for allowance of commissions held on June 10, 2010, the Court observed, and counsel for Ms. Dreier agreed, that the Separation Agreement was entirely void of the term "acceleration" or an acceleration clause. <u>See</u>, <u>Exhibit "C"</u>.

[9] The Trustee submits that even if the Separation Agreement had contained such an acceleration provision, or if it is somehow implied therein (which it is not from the clear reading of the expansive document), then there would also be the concomitant right of the Trustee to decelerate the obligations under the divorce settlement agreement, and to pay Ms. Dreier a very limited amount (with consideration to be given to the present value of money). Thus, the substantial majority of Elisa Dreier's Claim would be disallowed regardless. As stated herein, the Trustee already paid Ms. Dreier her Undisputed DSO Claim, which represents the funds for which the Debtor was in default as of the Filing Date.

15

must remedy certain defaults, and if he does not, then Ms. Dreier will seek costs and related expenses in connection with the sale of any assets sold to satisfy the Debtor's obligations. Had there been an acceleration of the debts under the Separation Agreement she would have simply said that. Moreover, the Notice of default specifically contemplates another action on her part and not an automatic acceleration of debt, which is not mentioned anywhere in the Separation Agreement.

47. The unambiguous language of both the Separation Agreement and the subsequent Notice of Default collectively demonstrates that the parties did not contemplate that an acceleration provision be included in the Separation Agreement. Therefore, the intent to include such a provision was lacking— there was no "meeting of the minds" to provide for acceleration. Again, had there been even a scintilla of such a meeting of the minds concerning acceleration, it would have been extraordinarily uncomplicated to include such a provision in the protracted Separation Agreement. Ms. Dreier is simply trying to rewrite the agreement to tailor it to the present circumstances of this bankruptcy case.

48. Moreover, the language of the Notice of Default itself, which is signed by Elisa Dreier, confirms that, even in her <u>own</u> mind, Ms. Dreier did not believe that an acceleration of obligations was provided for in the Separation Agreement. Intent is established by examining the surrounding circumstances, which necessarily include Ms. Dreier's own actions. As set forth above, Ms. Dreier unsuccessfully challenged the terms of the Separation Agreement, and such adverse determinations were upheld against her prior to the Filing Date. Elisa Dreier's acceleration argument is just another bid by her to rewrite the agreement to step ahead of other creditors of this estate. It is only now— after the fact that she was unable to modify the terms of the Separation Agreement—that Ms. Dreier makes a backdoor attempt to obtain a further

16

distribution from assets of the estate. Such distribution from estate assets rightfully belongs to <u>valid, matured and allowed</u> claimants of this estate, not Ms. Dreier, except to the extent of her allowed general unsecured claim. To determine otherwise would be to the detriment of such bona fide creditors and in contravention of the clear mandates of the Bankruptcy Code.

49. Ms. Dreier is engaging in revisionist history by her desperate attempt to force an acceleration provision into a document in which none exists. "A right to accelerate … should be clear and unequivocal, and if there is a reasonable doubt as to the meaning of the terms employed preference should be given to the construction which will . . . prevent acceleration of maturity." <u>In re Crystal Properties, Ltd.</u>, 268 F.3d 743, 751 (9th Cir. 2001); <u>First Bank Investors' Trust v. Tarkio College</u>, 129 F.3d 471, 475 (8th Cir. 1997). Acceleration is a harsh remedy, and therefore, acceleration clauses and notice of acceleration should be <u>clear</u>, because courts abhor a forfeiture. <u>In re Tarkio College</u>, 195 B.R. 424, 429 (Bankr. W.D. Mo. 1996). Here, based upon the above authorities, the very admission by Ms. Dreier in her pending motion dated August 5, 2010, seeking relief from stay for, among other things, "<u>clarification</u>" concerning whether an acceleration provision is provided for in the Separation Agreement, mandates a finding that the Separation Agreement is void of an acceleration provision. Even if a tortured reading of the Separation Agreement identified a global intent to accelerate "<u>all</u>" obligations under the Separation Agreement, the absolute lack of clarity concerning any such clause or the intent to exercise such clause by virtue of Ms. Dreier's Notice of Default militates against acceleration.

50. Consequently, the Trustee is entitled to a determination of this Court disallowing that portion of Elisa Dreier's Claim that was an unmatured domestic support obligation as of the filing of the bankruptcy petition and to reclassify the balance of her claim as a general unsecured, non-DSO claim against the Debtor's estate.

**WHEREFORE,** based upon the foregoing, the Trustee respectfully requests that this Court grant the Trustee's motion and enter an Order (i) disallowing the Unmatured DSO Portion of Claim 14 in the amount of $5,879,117.00; and (ii) reclassifying the Equitable Distribution Portion of Claim 14 as a general unsecured claim in an amount that is yet undetermined.

Dated: August 10, 2010
       Wantagh, New York

                              **LaMONICA HERBST & MANISCALCO, LLP**
                              Counsel to Salvatore LaMonica, Esq., as Trustee

By:    *s/ Gary F. Herbst*
           Gary F. Herbst, Esq.
           A Member of the Firm
           3305 Jerusalem Avenue
           Wantagh, New York 11793
           (516) 826-6500

*M:\Documents\Company\Cases\Dreier, Marc\E. Dreier Claim Objection\Motion.Rev.Doc*